43027, 43040.   BAILEY v. LOUISVILLE & NASHVILLE RAILROAD COMPANY; and vice versa.

187

Submitted September 8, 1967—Decided January 26, 1968—Rehearing denied February 9, 1968—Cert.

*John I. Kelley, Foster & Fudge,* for appellant.

*Hansell, Post, Brandon & Dorsey, ·Dent Acree,* for appellee.

Pannell, Judge. Mrs. Emma (John H.) Bailey brought an action against the Louisville & Nashville Railroad Company seeking to recover damages for breach of contract of carriage entered into in Atlanta, Ga., the injuries occurring when petitioner alighted from one of the defendant's trains. The petition alleged that the train arrived at the New Orleans Union Passenger Terminal Station and stopped for the purpose of discharging passengers pursuant to an announcement made by the conductor. The allegations, insofar as here material, were as follows: "8. That after said train came to a stop, as aforesaid, your petitioner and her said daughter, preceded by other pas-

sengers, made their way to the vestibule of the coach in which they had been riding for the purpose of descending the steps of said train and alighting therefrom.

"9. That your petitioner at said time and place was carrying a stole over her arms and shoulder, her purse, a beaded bag and a hat box, as she followed her said daughter and other passengers to the vestibule of said coach and as they descended the steps to alight from said train; that your petitioner was unfamiliar with defendant's said station and landing places for passengers in alighting from defendant's said train and her view of the landing place for her to alight and the distance from the bottom step of said coach to the landing platform, which petitioner alleges on information and belief to have been approximately fifteen inches, and the lack of a pedestal or stool at said time and place was obstructed by passengers alighting and departing from said train ahead of your petitioner, as she descended said steps and attempted to alight from said train; that the defendant's conductor of said train, who petitioner alleges on information and belief had preceded her in alighting from said train at said time and place, was standing a few steps away, apparently engaged in conversation, as your petitioner attempted to alight and as no porter or other servant of defendant was present to assist passengers in alighting or to apprize them of the distance from the bottom step to the landing platform, your petitioner relying upon the defendant to furnish her a safe place and reasonable facilities for alighting, was led to believe that it was safe for her to alight; that accordingly she followed said passengers preceding her as they alighted, and upon reaching the bottom step, she attempted to step to the platform of said station, when by reason of the distance involved, as aforesaid, as she held to the hand rail with her right hand and stepped off with her left foot, the weight of her body suddenly shifted and her left foot struck the platform in an oblique or glancing manner, causing her to trip and fall on her left side to the concrete platform of said station and propelling her feet and lower extremities under said coach and the steps thereof, all with such terrific impact, force and violence as to inflict upon your petitioner the serious and painful injuries hereinafter stated."

The allegations of negligence were as follows: "In failing to provide a conductor, porter, or other servant of the defendant to assist your petitioner in alighting from said train at said time and place" and "In failing to provide your petitioner with reasonable facilities to make it safe for her to alight at said time and place" and "In failing to provide a stool, pedestal or other safety facility or devise [sic] to assist her in alighting from said train," "In failing to provide sufficient personnel in order to anticipate and prevent the occurrence of such an accident" and "The failure of defendant's said conductor and porter at said time and place to observe said alighting conditions and to apprize your petitioner thereof and to provide a stool or pedestal to enable her to alight safely from defendant's said train." Plaintiff-appellant contends that her petition met the requirements of *Metts v. Louisville & N. R. Co.*, 52 Ga. App. 115, supra. The material allegations in the *Metts* case are shown in paragraphs 4 and 5 of the petition in that case, as follows: "4. That upon reaching the front platform of the coach and relying upon the presumption that the defendant companies, by and through their agents and employees, would furnish her and her two children a safe place in which to alight, she undertook to leave the platform of the coach with a three-year-old child, and in stepping from the last step of the platform of the coach leading to the floor or landing, sustaining the injuries hereinafter shown. That when she started down the steps leading from the platform to the landing, she did not know the distance from the last step to the landing, and did not discover that the distance from the last step to the landing was too great to be reached in safety by one making an ordinary step or stride and did not know that there was no stepping stool or other safe guard incident to and necessary to a safe landing were absent. Your petitioner shows that the distance, as afterwards found out by her, from the last step leading from the platform of the coach in which she took passage, was about three feet to the floor or landing, and as she with her minor child stepped from the last step, she found herself stepping into mid-air, and having lost her balance, she plunged with great force to the floor, or landing.

"That the defendant companies did not have at said landing

a foot stool or other appliance to furnish petitioner a safe landing, and did not provide petitioner any employee or agent to assist her and her minor child in making a safe exit from the coach then and there in the control of the defendant company.

"5. That the defendant companies owed petitioner a duty of providing her with a safe place in which to alight from the car, and that it was chargeable with notice of the distance that was then and there present, from the last step of the platform of the coach to the landing, and, in failing to have some person to assist petitioner in making a safe landing and in the failure to have at the bottom of the steps, leading from the platform of the coach to the landing, a foot stool, or stepping stool at the time at which petitioner undertook to make her exit from the coach under the facts and circumstances herein set forth, was negligence."

The trial court sustained the defendant's general demurrer to the petition and dismissed it. The plaintiff appeals complaining of the sustaining of the general demurrer to her petition; the defendant filed a cross appeal complaining of the sustaining of plaintiff's demurrer to the defendant's plea of res judicata.

Headnotes 1, 2, 3 and 4 do not require any elaboration. Only Headnote 5 will be discussed.

The plea of res judicata discloses that the plaintiff here filed suit on the same cause of action, but based on the tort, against the defendant here and the New Orleans Union Passenger Terminal Station in the courts of the State of Louisiana, and, that pursuant to the laws of the State of Louisiana, the action was dismissed "with prejudice," which dismissal, because of statutory provisions and court interpretations thereon, also pleaded, made such a judgment of dismissal "with prejudice" after time for appeal elapsed a judgment on the merits sufficient to support a plea of res judicata. We have similar provisions under our new Civil Practice Act (Section 41 (b), Ga. L. 1965, pp. 609, 653) which Act, however, is not applicable to the present case. The plaintiff contends that, since there was no actual determination of the merits of the case in Louisiana, such dismissal cannot support a plea of res judicata to a suit filed in this state.

"The judgment of a court of one State, when sued on, pleaded,

or introduced in evidence in another State, is entitled to receive the same full faith, credit, and respect that is accorded to it in the State where rendered. If it is valid and conclusive there, it is so in all other States. *Tompkins v. Cooper,* 97 Ga. 631 (25 SE 247); *Thomas v. Morrisett,* 76 Ga. 385. Therefore, a judgment rendered by a competent court of another State is conclusive on the merits in the courts of this State when made the basis of an action or defense, and the merits can not be reinvestigated. *Hope v. Walsenburg First National Bank,* 142 Ga. 310 (82 SE 929); *Spann v. Edwards,* 139 Ga. 715 (77 SE 1128); *McCauley v. Hargroves,* 48 Ga. 50 (50 AR 660)." *Dyal v. Dyal,* 65 Ga. App. 359, 364 (16 SE2d 53). " 'Full Faith and Credit,' as that term is used in Art. IV, Sec. I of the Constitution, means that a judgment in one State must be given in any other State the full effect it is given by law in the State of its origin." *Peeples v. Peeples,* 103 Ga. App. 462 (2a) (119 SE2d 710). See also *Settle v. Alison,* 8 Ga. 201 (1) (52 AD 393). Under these decisions, and the constitutional provision interpreted, we are compelled to hold that the plea of res judicata was sufficient as against the demurrer urging that the judgment pleaded was not a judgment upon the merits. *Code* §§ 3-607, 110-501. The case of Brown v. Bullock, 17 A. D. 2d 424 (235 NYS2d 837), relied on by the plaintiff, does not require a different ruling, even if we were bound to follow it. In that case the court was interpreting one of its own orders dismissing a case "with prejudice" and construed it as not passing on the merits and therefore not being available in support of a plea of res judicata to a suit pending in federal court, and so indicating its intention. Here we have a case where an express statute is involved, construed by the courts of that state (Louisiana) as determining that such an order was one upon "the merits." The trial court, therefore, erred in sustaining the demurrer to the plea of res judicata.

*Judgment reversed on main appeal and on cross appeal. Bell, P. J., and Whitman, J., concur.*